B27 (Official Form 27) (12/09)                                                                                          Page 1

# UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF NEW JERSEY
## CAMDEN DIVISION

IN RE:                              §
                                    §   CASE NO. 13-18067-JHW
JOSEPH A DOBLEMAN JR.               §
                                    §   CHAPTER 7
                                    §

## REAFFIRMATION AGREEMENT COVER SHEET

This form must be completed in its entirety and filed, with the reaffirmation agreement attached, within the time set under Rule 4008. It may be filed by any party to the reaffirmation agreement.

1. Creditor's Name:     Harley-Davidson Credit Corp

2. Amount of the debt subject to this reaffirmation agreement: $4,507.61 on the date of bankruptcy $4,507.61 to be paid under reaffirmation agreement

3. Annual percentage rate of interest:   14.25% prior to bankruptcy
   14.25% under reaffirmation agreement ( ☒ Fixed Rate ☐ Adjustable Rate)

4. Repayment terms (if fixed rate): $227.87 per month for 17 months
   *On the maturity date, all outstanding amounts owed under this reaffirmation agreement shall be immediately due and payable.

5. Collateral, if any, securing the debt: Current market value: $10,885.00
   Description:  2005 HARLEY-DAVIDSON FXSTBI NIGHT TRAIN, VIN: 1HD1JAB185Y058796

6. Does the creditor assert that the debt is nondischargeable? ☐Yes ☒ No
   (If yes, attach a declaration setting forth the nature of the debt and basis for the contention that the debt is nondischargeable.)

| Debtor's Schedule I and J Entries | | | Debtor's Income and Expenses as Stated on Reaffirmation Agreement | | |
|---|---|---|---|---|---|
| 7A. | Total monthly income from Schedule I, line 16 | $2,686.67 | 7B. | Monthly income from all sources after payroll deductions | $2,686.67 |
| 8A. | Total monthly expenses from Schedule J, line 18 | $4,984.00 | 8B. | Monthly expenses | $ 4984 |
| 9A. | Total monthly payments on reaffirmed debts not listed on schedule J | $_____ | 9B. | Total monthly payments on reaffirmed debts not included in monthly expenses | $ — |
|  |  |  | 10B. | Net monthly income (Subtract sum of lines 8B and 9B from line 7B. If total is less than zero, put the number in brackets.) | $ (2298) |

REAFFIRMATION
RAA_CvrShtDflt
3904-N-1895

B27 (Official Form 27) (12/09)                                                                    Page 2

11.   Explain with specificity any difference between the income amounts (7A and 7B):
_____
_____

12.   Explain with specificity any difference between the expense amounts (8A and 8B):
_____
_____

If line 11 or 12 is completed, the undersigned debtor, and joint debtor if applicable, certifies that any explanation contained on those lines is true and correct.

X _____                _____
Signature of Debtor: Joseph A Dobleman Jr.        Signature of Joint Debtor:
(only required if line 11 or 12 is completed)     (if applicable, and only required if line 11 or 12 is completed)

5-21-13

Other Information

☒   Check this box if the total on line 10B is less than zero. If that number is less than zero, a presumption of undue hardship arises (unless the creditor is a credit union) and you must explain with specificity the sources of funds available to the Debtor to make the monthly payments on the reaffirmed debt:
MY FINANCEE CONTRIBUTES TO OUR HOUSEHOLD EXPENSES.

Was debtor represented by counsel during the course of negotiating this reaffirmation agreement?
    X  Yes            ___ No

If debtor was represented by counsel during the course of negotiating this reaffirmation agreement, has counsel executed a certification (affidavit or declaration) in support of the reaffirmation agreement?
    X  Yes            ___ No


# FILER'S CERTIFICATION

I hereby certify that the attached agreement is a true and correct copy of the reaffirmation agreement between the parties identified on this Reaffirmation Agreement Cover Sheet.

_____
Bobbie A. Novin
K. Greg Daniels
Wesley A. Wiley
9441 LBJ Freeway, Suite 250
Dallas, Texas 75243
(972) 643-6600
(972) 643-6698
E-mail: Consumer7@NBSDefaultServices.com
Authorized Agents for Creditor

REAFFIRMATION
RAA_CvrShtDflt
3904-N-1895

B240A (Form B240A) (04/10)                                                                                              Page 1

> **Check One**
> ☒ **Presumption of Undue Hardship**
> ☐ **No Presumption of Undue Hardship**
>
> *See Debtor's Statement in Support of Reaffirmation, Part II below, to determine which box to check.*

# UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF NEW JERSEY
## CAMDEN DIVISION

In Re: Joseph A Dobleman Jr.　　§　　Case No. 13-18067-JHW
　　　　　　Debtor　　　　　　　§　　Chapter 7
　　　　　　　　　　　　　　　　§
　　　　　　　　　　　　　　　　§

## REAFFIRMATION DOCUMENTS

**Name of Creditor:** <u>Harley-Davidson Credit Corp</u>

☐  Check this box if Creditor is a Credit Union

**PART I.　　REAFFIRMATION AGREEMENT**

**Reaffirming a debt is a serious financial decision. Before entering into this Reaffirmation Agreement, you must review the important disclosures, instructions, and definitions found in Part V of this form.**

A. Brief description of the original agreement being reaffirmed: Motor Vehicle Lien

B. ***AMOUNT REAFFIRMED***:　　　　　　　　　　　　　　　　　　　　　　　　$4,507.61

　　The Amount Reaffirmed is the entire amount that you are agreeing to pay. This may include unpaid principal, interest, and fees and costs (if any) arising on or before April 24, 2013, which is the date of the Disclosure Statement portion of this form (Part V).

　　*See the definition of "Amount Reaffirmed" in Part V, Section C below.*

C. The ***ANNUAL PERCENTAGE RATE*** applicable to the Amount Reaffirmed is 14.25%.

　　*See definition of "Annual Percentage Rate" in Part V, Section C below.*

　　　　This is a *(check one)*　　　　☒ Fixed Rate　　　　☐ Variable Rate

If the loan has a variable rate, the future interest rate may increase or decrease from the Annual Percentage Rate disclosed here.

REAFFIRMATION
RAA_FormDflt00
3904-N-1895

B240A Reaffirmation Documents                                                                                          Page 2

D. Reaffirmation Agreement Repayment Terms *(check and complete one)*:

☒ $227.87 per month for 17 months starting on February 2, 2013.
**\*On the maturity date, all outstanding amounts owed under this reaffirmation agreement shall be immediately due and payable.**

☐ Describe repayment terms, including whether future payment amount(s) may be different from the initial payment amount.

_____

_____

_____

E. Describe the collateral, if any, securing the debt:

Description: 2005 HARLEY-DAVIDSON FXSTBI NIGHT TRAIN, VIN: 1HD1JAB185Y058796

Current Market Value:        $10,885.00

F. Did the debt that is being reaffirmed arise from the purchase of the collateral described above?

☒ Yes.    What was the purchase price for the collateral?                                $10,987.15

☐ No.     What was the amount of the original loan?                                      $_____

G.    Specify the changes made by this Reaffirmation Agreement to the most recent credit terms on the reaffirmed debt and any related agreement: Harley-Davidson Credit Corp. agrees to extend 2 payments in the amount of $227.87 each to the end of the contract term. Debtor's contractual monthly payments will resume on 04/02/2013.

|  | Terms as of the Date of Bankruptcy | Terms After Reaffirmation |
|---|---|---|
| Balance Due *(including fees and costs)* | $4,507.61 | $4,507.61 |
| Annual Percentage Rate | 14.25% | 14.25% |
| Monthly Payment | $227.87 | $227.87 |

H. ☐ Check this box if the creditor is agreeing to provide you with additional future credit in connection with this Reaffirmation Agreement. Describe the credit limit, the Annual Percentage Rate that applies to future credit and any other terms on future purchases and advances using such credit:

_____

_____

## PART II. DEBTOR'S STATEMENT IN SUPPORT OF REAFFIRMATION AGREEMENT

A. Were you represented by an attorney during the course of negotiating this agreement?
   Check one:   ☒ Yes        ☐ No

B. Is the creditor a credit union?
   Check one:   ☐ Yes        ☒ No

REAFFIRMATION
RAA_FormDflt00
3904-N-1895

B240A Reaffirmation Documents                                                                                          Page 3

C. If your answer to EITHER question A. or B. above is "No," complete 1. and 2. below.

    1. Your present monthly income and expenses are:

       a. Monthly income from all sources after payroll deductions     $2,686.67
          (take-home pay plus any other income)

       b. Monthly expenses     $ 4757
          (including all reaffirmed debts except this one)

       c. Amount available to pay this reaffirmed debt     $ 227
          (subtract b. from a.)

       d. Amount of monthly payment required for this reaffirmed debt     $227.87

*If the monthly payment on this reaffirmed debt (line d.) is **greater than** the amount you have available to pay this reaffirmed debt (line c.), you must check the box at the top of page one that says "Presumption of Undue Hardship." Otherwise, you must check the box at the top of page one that says "No Presumption of Undue Hardship."*

    2. You believe that this reaffirmation agreement will not impose an undue hardship on you or your dependents because:

    Check one of the two statements below, if applicable:

    ☐ You can afford to make the payments on the reaffirmed debt because your monthly income is greater than your monthly expenses even after you include in your expenses the monthly payments on all debts you are reaffirming, including this one.

    ☒ You can afford to make the payments on the reaffirmed debt even though your monthly income is less than your monthly expenses after you include in your expenses the monthly payments on all debts you are reaffirming, including this one, because:
        MY LIVE-IN FIANCEE CONTRIBUTES TO OUR HOUSEHOLD EXPENSES

    Use an additional page if needed for a full explanation.

D. If your answers to BOTH questions A. and B. above were "Yes," check the following statement, if applicable:

    ☐ You believe this Reaffirmation Agreement is in your financial interest and you can afford to make the payments on the reaffirmed debt.

*Also, check the box at the top of page one that says "No Presumption of Undue Hardship."*

B240A Reaffirmation Documents                                                                                            Page 4

### PART III. CERTIFICATION BY DEBTOR(S) AND SIGNATURES OF PARTIES

I hereby certify that:

(1) I agree to reaffirm the debt described above.

(2) Before signing this Reaffirmation Agreement, I read the terms disclosed in this Reaffirmation Agreement (Part I) and the Disclosure Statement, Instructions and Definitions included in Part V below;

(3) The Debtor's Statement in Support of Reaffirmation Agreement (Part II above) is true and complete;

(4) I am entering into this agreement voluntarily and am fully informed of my rights and responsibilities; and

(5) I have received a copy of this completed and signed Reaffirmation Documents form.

SIGNATURE(S) (If this is a joint Reaffirmation Agreement, both debtors must sign.):

Date: 5-21-13          Signature: X_____
                                  Joseph A. Dobleman Jr.

Date: _____         Signature: _____

**Reaffirmation Agreement Terms Accepted by Creditor:**

| Creditor | Harley-Davidson Credit Corp<br>Print Name | 9441 LBJ Freeway, Suite 250, Dallas, Texas 75243<br>Address |
|---|---|---|
| Bobbie A. Novin<br>K. Greg Daniels<br>Wesley A. Wiley<br>Print Name of Representative | | Signature _____ 6/26/13<br>                                Date |

### PART IV. CERTIFICATION BY DEBTOR'S ATTORNEY (IF ANY)

*To be filed only if the attorney represented the debtor during the course of negotiating this agreement.*

I hereby certify that: (1) this agreement represents a fully informed and voluntary agreement by the debtor; (2) this agreement does not impose an undue hardship on the debtor or any dependent of the debtor; and (3) I have fully advised the debtor of the legal effect and consequences of this agreement and any default under this agreement.

☐ A presumption of undue hardship has been established with respect to this agreement. In my opinion, however, the debtor is able to make the required payment.

*Check box, if the presumption of undue hardship box is checked on page 1 and the creditor is not a Credit Union.*

Date JUNE 1 13   Signature of Debtor's Attorney  _____
                 Print Name of Debtor's Attorney   David H. James

REAFFIRMATION
RAA_FormDflt00
3904-N-1895

B240A Reaffirmation Documents                                                                                          Page 5

## PART V.  DISCLOSURE STATEMENT AND INSTRUCTIONS TO DEBTOR(S)

Before agreeing to reaffirm a debt, review the terms disclosed in the Reaffirmation Agreement (Part I above) and these additional important disclosures and instructions.

Reaffirming a debt is a serious financial decision. The law requires you to take certain steps to make sure the decision is in your best interest. If these steps, which are detailed in the Instructions provided in Part V, Section B below, are not completed, the Reaffirmation Agreement is not effective, even though you have signed it.

### A. DISCLOSURE STATEMENT

1. **What are your obligations if you reaffirm a debt?** A reaffirmed debt remains your personal legal obligation to pay. Your reaffirmed debt is not discharged in your bankruptcy case. That means that if you default on your reaffirmed debt after your bankruptcy case is over, your creditor may be able to take your property or your wages. Your obligations will be determined by the Reaffirmation Agreement, which may have changed the terms of the original agreement. If you are reaffirming an open end credit agreement, that agreement or applicable law may permit the creditor to change the terms of that agreement in the future under certain conditions.

2. **Are you required to enter into a reaffirmation agreement by any law?** No, you are not required to reaffirm a debt by any law. Only agree to reaffirm a debt if it is in your best interest. Be sure you can afford the payments that you agree to make.

3. **What if your creditor has a security interest or lien?** Your bankruptcy discharge does not eliminate any lien on your property. A "lien" is often referred to as a security interest, deed of trust, mortgage, or security deed. The property subject to a lien is often referred to as collateral. Even if you do not reaffirm and your personal liability on the debt is discharged, your creditor may still have a right under the lien to take the collateral if you do not pay, or default on the debt. If the collateral is personal property that is exempt or that the trustee has abandoned, you may be able to redeem the item rather than reaffirm the debt. To redeem, you make a single payment to the creditor equal to the current value of the collateral, as the parties agree or the court determines.

4. **How soon do you need to enter into and file a reaffirmation agreement?** If you decide to enter into a reaffirmation agreement, you must do so before you receive your discharge. After you have entered into a reaffirmation agreement and all parts of this form that require a signature have been signed, either you or the creditor should file it as soon as possible. The signed agreement must be filed with the court no later than 60 days after the first date set for the meeting of creditors, so that the court will have time to schedule a hearing to approve the agreement if approval is required. However, the court may extend the time for filing, even after the 60-day period has ended.

5. **Can you cancel the agreement?** You may rescind (cancel) your Reaffirmation Agreement at any time before the bankruptcy court enters your discharge, or during the 60-day period that begins on the date your Reaffirmation Agreement is filed with the court, whichever occurs later. To rescind (cancel) your Reaffirmation Agreement, you must notify the creditor that your Reaffirmation Agreement is rescinded (or canceled). Remember that you can rescind the agreement, even if the court approves it, as long as you rescind within the time allowed.

REAFFIRMATION
RAA FormDflt00

6. When will this Reaffirmation Agreement be effective?

    a. If you *were* represented by an attorney during the negotiation of your Reaffirmation Agreement and

        i. if the creditor is not a Credit Union, your Reaffirmation Agreement becomes effective when it is filed with the court unless the reaffirmation is presumed to be an undue hardship. If the Reaffirmation Agreement is presumed to be an undue hardship, the court must review it and may set a hearing to determine whether you have rebutted the presumption of undue hardship.

        ii. if the creditor is a Credit Union, your Reaffirmation Agreement becomes effective when it is filed with the court.

    b. If you *were not* represented by an attorney during the negotiation of your Reaffirmation Agreement, the Reaffirmation Agreement will not be effective unless the court approves it. To have the court approve your agreement, you must file a motion. See Instruction 5, below. The court will notify you and the creditor of the hearing on your Reaffirmation Agreement. You must attend this hearing, at which time the judge will review your Reaffirmation Agreement. If the judge decides that the Reaffirmation Agreement is in your best interest, the agreement will be approved and will become effective. However, if your Reaffirmation Agreement is for a consumer debt secured by a mortgage, deed of trust, security deed, or other lien on your real property, like your home, you do not need to file a motion or get court approval of your Reaffirmation Agreement.

7. What if you have questions about what a creditor can do? If you have questions about reaffirming a debt or what the law requires, consult with the attorney who helped you negotiate this agreement. If you do not have an attorney helping you, you may ask the judge to explain the effect of this agreement to you at the hearing to approve the Reaffirmation Agreement. When this disclosure refers to what a creditor "may" do, it is not giving any creditor permission to do anything. The word "may" is used to tell you what might occur if the law permits the creditor to take the action.

## B. INSTRUCTIONS

1. Review these Disclosures and carefully consider your decision to reaffirm. If you want to reaffirm, review and complete the information contained in the Reaffirmation Agreement (Part I above). If your case is a joint case, both spouses must sign the agreement if both are reaffirming the debt.

2. Complete the Debtor's Statement in Support of Reaffirmation Agreement (Part II above). Be sure that you can afford to make the payments that you are agreeing to make and that you have received a copy of the Disclosure Statement and a completed and signed Reaffirmation Agreement.

3. If you were represented by an attorney during the negotiation of your Reaffirmation Agreement, your attorney must sign and date the Certification By Debtor's Attorney (Part IV above).

4. You or your creditor must file with the court the original of this Reaffirmation Documents packet and a completed Reaffirmation Agreement Cover Sheet (Official Bankruptcy Form 27).

5. *If you are not represented by an attorney, you must also complete and file with the court a separate document entitled "Motion for Court Approval of Reaffirmation Agreement" unless your Reaffirmation Agreement is for a consumer debt secured by a lien on your real property, such as your home. You can use Form B240B to do this.*

B240A Reaffirmation Documents                                                                Page 7

## C. DEFINITIONS

1. "Amount Reaffirmed" means the total amount of debt that you are agreeing to pay (reaffirm) by entering into this agreement. The total amount of debt includes any unpaid fees and costs that you are agreeing to pay that arose on or before the date of disclosure, which is the date specified in the Reaffirmation Agreement (Part I, Section B above). Your credit agreement may obligate you to pay additional amounts that arise after the date of this disclosure. You should consult your credit agreement to determine whether you are obligated to pay additional amounts that may arise after the date of this disclosure.

2. "Annual Percentage Rate" means the interest rate on a loan expressed under the rules required by federal law. The annual percentage rate (as opposed to the "stated interest rate") tells you the full cost of your credit including many of the creditor's fees and charges. You will find the annual percentage rate for your original agreement on the disclosure statement that was given to you when the loan papers were signed or on the monthly statements sent to you for an open end credit account such as a credit card.

3. "Credit Union" means a financial institution as defined in 12 U.S.C. § 461(b)(1)(A)(iv). It is owned and controlled by and provides financial services to its members and typically uses words like "Credit Union" or initials like "C.U." or "F.C.U." in its name.

# Eaglemark Savings Bank
*A subsidiary of Harley-Davidson*

Reference [redacted]

## PROMISSORY NOTE (SIMPLE INTEREST) AND SECURITY AGREEMENT ("CONTRACT")

**BORROWER Name and Mailing Address**
JOSEPH A DOBLEMAN
522 RIDGEWAY STREET
GLOUCESTER, NJ 08030

**CO-BORROWER Name and Mailing Address**
cont met

**LENDER Name and Address**
Eaglemark Savings Bank ("ESB")
P.O. Box 22048
Carson City, NV 89721-2048

**Definitions.** The words "You" and "Your" mean the Borrower/Co-Borrower and/or Co-Signer, if any, who sign(s) below. The word "Lender" means Eaglemark Savings Bank, its successor and assigns ("ESB"). The word "Contract" means this Promissory Note and Security Agreement. The word "Vehicle" means the motorcycle and/or motor vehicle, described more fully below.
**Promise to Pay.** You promise to pay to the Lender the Amount Financed plus interest figured on a daily basis on the unpaid balance as set forth in this Contract and in the Truth in Lending Disclosures set forth below.
**Payment Deferral.** Any deferral will continue to accrue interest during the deferral period.
Where applicable, Finance Charges will not accrue for the first ___N/A___ days of this Contract ("No Finance Charge" period).

### DESCRIPTION OF PURCHASE

| MAKE | YEAR | NEW/USED | MODEL | COLOR | VEHICLE IDENTIFICATION NUMBER |
|---|---|---|---|---|---|
| HD | 2005 | USED | FXSTBI | 010 BLACK | 1HD1JAB18SY058796 |

Description of the body and major items of equipment sold:

Description of Sale Terms from Bill of Sale:
A. Net Cost of Goods (includes cost of vehicle, accessories, and any negative trade-in equity to be financed) $ 13,495.00 (A)
B. Total Down Payment (includes cash down payment and positive trade-in allowance—must equal required down payment of Line A) $ 3,400.00 (B)
C. Unpaid Balance of Cost of Goods (A - B = C; C must equal amount in Item 3-A, below) $ 10,095.00 (C)

### TRUTH IN LENDING DISCLOSURES

| ANNUAL PERCENTAGE RATE The cost of Your credit as a yearly rate. | FINANCE CHARGE The dollar amount the credit will cost You. (Estimate) | AMOUNT FINANCED The amount of credit provided to You or on Your behalf. | TOTAL OF PAYMENTS The amount You will have paid after You have made all payments as scheduled. (Estimate) |
|---|---|---|---|
| 14.2500 % | $ 6,419.49 | $ 10,987.15 | $ 16,406.64 |

Your payment schedule will be:

| NUMBER OF PAYMENTS | AMOUNT OF PAYMENTS | WHEN PAYMENTS ARE DUE | OR AS FOLLOWS: |
|---|---|---|---|
| 72 | $ 227.87 | Monthly Beginning: 04/02/2008 | UNTIL PAID IN FULL |
| | $ | Monthly Beginning: | |

**Prepayment:** If You pay off all Your debt early, You will not have to pay a prepayment premium or penalty.
**Security Interest:** You are giving a security interest in the property being purchased. Any of Your property securing Your other obligations to Lender also secures Your obligation under this Contract.
**Late Charges:** If any payment is more than ten (10) days late, You will be charged $20 or 10% of the late amount, whichever is greater, with a maximum of $30.
**Additional Information:** See other side of this Contract for more information including information about nonpayment, default, any required repayment in full before the scheduled date, and security interest.

### ITEMIZATION OF AMOUNT FINANCED

1. Amount Given to You Directly $ N/A (1)
2. Amount Paid on Your Account $ N/A (2)
3. Amount Paid to Others on Your Behalf:
   A. To (Dealer Name & No.) BARB'S HARLEY-DAVIDSON 3093 $ 10,095.00 (A)
   B. Cost of Required Physical Damage Insurance paid to insurance company* $ N/A (B)
   C. Cost of Optional Service Contract*
      To: $ N/A (C)
   D. Cost of Optional Credit Insurance paid to insurance company* $ N/A (D)
   E. Cost of Optional GAP Addendum*
      To: $ N/A (E)
   F. Theft Deterrent Device $ N/A (F)
   G. Surface Protection Product $ N/A (G)
   H. Government license and/or registration fees paid to public officials (describe): $ 48.50 (H)
   I. Government Certificate of Title Fees paid to public officials $ N/A (I)
   J. Taxes (describe):
      To STATE OF NJ For SALES TAX $ 706.65 (J)
      To For $ N/A (J)
   K. Other charges (identify who will receive payment and describe purpose):*
      To BARB'S HARLEY-DAVID For DOC FEE $ 139.00 (K)
      To For $ N/A (K)
      To For $ N/A (K)
   Total Amount Paid to Others on Your Behalf (add A thru K) $ 10,987.15 (3)
4. Cost of Optional Debt Protection* to Eaglemark Savings Bank $ N/A (4)
5. Amount Financed (1+2+3+4) $ 10,987.15 (5)

*Dealer/Seller and/or Lender and/or Others may retain, or receive, a portion of these amounts.
You authorize the Lender and/or Others to disburse funds as specified above in the Itemization of Amount Financed.
The Annual Percentage Rate may be negotiated with the dealership that sold You the Vehicle. We may share part of the Finance Charge with the dealership that sold You the Vehicle.

### INSURANCE, FINANCING AND SERVICE PRODUCTS

**NOTICE:** No person is required, as a condition of obtaining this loan, to purchase Optional Credit Insurance, Optional Service Contract, Optional GAP Contract or Optional Debt Protection, or to purchase, or negotiate, any insurance through a particular insurance company, agent or broker.

**Required Physical Damage Insurance.** Physical damage insurance is required, but You may obtain it from anyone You want who is acceptable to the Lender. If You choose to buy and finance this insurance through Lender, the cost of this insurance is shown in item 3B of the ITEMIZATION OF AMOUNT FINANCED section.
**THIS SECTION MUST BE COMPLETED**
Insurance Company: RIDER INS
Telephone Number: [redacted]
Term: 12 Months
☒ $ 500.00 Deductible Collision and either
☐ Full Comprehensive (includes Fire, Theft and Combined Additional Coverage); or
☒ $ 500.00 Deductible Comprehensive (includes Fire, Theft and Combined Additional Coverage)

Borrower has requested Lender to include in the balance due under this Contract the following insurance and/or service products. Borrower has requested Lender to procure insurance and/or service products upon the Vehicle described above. No insurance will be in force until accepted by the insurance carrier.

| TYPE | COST | SIGNATURE (if financed) | DECLINE TO PURCHASE (initials) |
|---|---|---|---|
| Credit Life (Borrower) | $ N/A | I want Credit Life X_____ | JD |
| Credit Life (Co-Borrower) | $ N/A | I want Credit Life X_____ | JD |
| Credit Life (Joint) | $ N/A | We want Credit Life X_____ X_____ | JD |
| Credit Disability (Borrower only) | $ N/A | I want Credit Disability X_____ | JD |
| Credit Life & Disability (Borrower only) | $ N/A | I want Credit Life & Disability X_____ | JD |
| GAP Addendum (Borrower only) | $ N/A | I want GAP Addendum X_____ | JD |
| Debt Protection | $ N/A | I want Debt Protection X_____ Borrower X_____ Co-Borrower | JD By-Borrower Co-Borrower |

**Optional Service Contract.** If You choose to buy and finance this product, the cost of this coverage is shown in item 3C of the ITEMIZATION OF AMOUNT FINANCED section. See Your service contract for details on the protection it provides.

**Optional Credit Insurance.** If You want this protection, check the program desired. If You have chosen this protection, and if You finance this insurance, the cost is shown in item 3D of the ITEMIZATION OF AMOUNT FINANCED section. Credit life insurance is based upon the payment schedule and term shown above. This protection may not pay all You owe on this contract if You make late payments. Disability protection covers the original payment amount of the term shown in the TRUTH IN LENDING DISCLOSURES above. If You make late payments, disability protection will not pay all of Your payments. Please refer to the separate agreement for any chosen program for details on all the protection it provides.

Credit Life:
☐ Borrower
☐ Co-Borrower
☐ Joint

Credit Disability:
☐ Borrower
☐ Joint (where applicable)

**Optional GAP Addendum.** If You choose to buy and finance a GAP Addendum, the cost of this coverage is shown in item 3E of the ITEMIZATION OF AMOUNT FINANCED section. See Your GAP Addendum for details on the protection it provides.

**Optional Debt Protection.** If You purchase and finance this product, the cost is shown in item 4 of the ITEMIZATION OF AMOUNT FINANCED section. See your Debt Protection contract for details on the protection it provides.
**CHOOSE ONLY ONE**
☐ Plan 1: Borrower only. Accidental Loss of Life, Total Disability (TD), and Involuntary Unemployment (IU).
☐ Plan 2: Co-Borrower only. Accidental Loss of Life, Total Disability (TD), and Involuntary Unemployment (IU).
☐ Plan 3: Accidental Loss of Life for Borrower and Co-Borrower. Total Disability (TD) and Involuntary Unemployment (IU) for Borrower only.
☐ Plan 4: Accidental Loss of Life for Borrower and Co-Borrower. Total Disability (TD) and Involuntary Unemployment (IU) for Co-Borrower only.

**THE INSURANCE REFERRED TO IN THIS CONTRACT DOES NOT INCLUDE COVERAGE FOR BODILY INJURY AND PROPERTY DAMAGE CAUSED TO OTHERS.**

### IMPORTANT SIGNATURES AND NOTICES

**NOTICE:** See the other side of this Contract for OTHER IMPORTANT AGREEMENTS
Do not sign this Contract before You read it or if it contains any blank spaces. You are entitled to a completed copy of this Contract. If you fail to perform Your obligations under this Contract, the Collateral may be repossessed and You may be liable for the unpaid indebtedness evidenced by this Contract.

You signed this Contract and received a copy on ___MARCH___ ___03___ ___2008___
                                                   (Month)      (Day)      (Year)

Borrower/Co-Borrower and/or Co-Signer are each jointly and severally liable for the entire obligation arising under this Contract.
Other Owner: An Other Owner is a person whose name is on the title to the Vehicle but who does not have to pay the debt.
The Co-Borrower and/or Other Owner (if applicable) know that the Lender has a security interest in the property purchased in this Contract and consents to the security interest.
**NOTICE TO CO-SIGNER:** YOUR SIGNATURE ON THIS NOTE MEANS THAT YOU ARE EQUALLY LIABLE FOR REPAYMENT OF THIS LOAN. IF THE BORROWER DOES NOT PAY, THE LENDER HAS LEGAL RIGHT TO COLLECT FROM YOU.

BORROWER signs below
By: X _[signature]_
Print name ___JOSEPH A DOBLEMAN___

CO-BORROWER signs below
By: X _____
Print name _____

OTHER OWNER signs below
By: X _____                    Print name _____
Other Owner address _____

Revised 11/2006    White: ORIGINAL/ESB    Yellow: BORROWER(S)    Pink: OTHER    Gold: RECORDING

## OTHER IMPORTANT AGREEMENTS

1. **Finance Charge.** The Finance Charge accrues each day at the Annual Percentage Rate on the unpaid balance of the Amount Financed until paid in full. Where applicable and not prohibited by law, the Lender will apply each payment first to any past due amounts on the account in the following order: Finance Charges, Expenses, Fees and the unpaid balance of the Amount Financed. Where applicable and not prohibited by law, payments are then applied to the Monthly Payment Amount on the account in the following order: Finance Charges, Expenses, Fees and the unpaid balance of the Amount Financed. After all past due amounts (if applicable) and the Monthly Payment Amount are satisfied, any excess amount received will be applied to the unpaid balance of the Amount Financed.

2. **Late Payments and Early Payments.** The disclosures of the Finance Charge and Total of Payments are based on the assumption that You will make every payment on the day it is due, according to the Payment Schedule. Since the Finance Charge accrues daily, You will pay more Finance Charge and Your Finance Charge and Total of Payments will be more if You pay late. You will pay less Finance Charge and Your Finance Charge and Total of Payments will be less if You pay early. If You pay early, the effect will be that Your last payment will be smaller. If You pay late You may have one or more additional payments. The amount of such additional payment(s) will not exceed the amount shown on the Payment Schedule.

3. **Ownership and Risk of Loss.** You agree to pay the Lender all You owe under this Contract even if the Vehicle is damaged, destroyed or missing. You and any Other Owner agree to keep the Vehicle in good condition or repair. You and any Other Owner agree to use the vehicle for personal use only, not to remove the Vehicle from the United States, and not to sell, rent, lease or otherwise transfer any interest in the Vehicle or this Contract without the Lender's written permission. You and any Other Owner agree to protect the Vehicle from claims of third persons. You and any Other Owner agree not to expose the Vehicle to misuse or confiscation. You and any Other Owner will make sure the Lender's security interest is (lien on) the Vehicle is shown on the title, or on other documentation acceptable to the Lender. You and any Other Owner agree to provide all acts, things and writings as the Lender may at any time request to protect or enforce its rights in the Vehicle and other collateral. You and any Other Owner will not do anything to defeat the Lender's lien. If the Lender pays any repair bills, storage bills, taxes, fines, or other charges on the Vehicle, You agree to repay the amount when the Lender asks for it.

4. **Security Interest.** You and any Other Owner grant the Lender a purchase money security interest in the Vehicle specified on the front of this Contract and any of the following that are purchased and financed in connection with this Contract: (1) any accessories, equipment, and replacement parts installed on the Vehicle; (2) any insurance premiums and charges for service, debt protection or GAP addendum returned to the Lender; (3) any proceeds of insurance policies, service, debt protection or GAP addendum on the Vehicle; and (4) any proceeds of insurance policies on Your life or health which are financed through this Contract. This purchase money security interest is in addition to any other security interest or lien the Lender holds, or which You are required to provide as a condition of this Contract. The Vehicle and all other property subject to a security interest in the Lender's favor is called the "Collateral". The Collateral secures payment of all amounts You owe on the Contract and on any transfer, renewal, extension or assignment of this Contract. It also secures Your other agreements in this Contract. To the extent permitted by applicable law, the Collateral under this Contract also secures Your other obligations to Lender, whether now owing or incurred after the date of this Contract.

5. **Waiver of Suretyship Defenses by Other Owner.** Any Other Owner agrees that Lender may, without notice to or consent from the Other Owner, modify, waive, or enforce any of Lender's rights against a Borrower without affecting Lender's rights with respect to the Collateral or the Other Owner, even if such action affects the Other Owner's rights with respect to the Collateral or the Borrower. Any Other Owner waives (i) any right to require Lender to proceed against any person or property, or exercise any remedy, before enforcing Lender's rights with respect to the Collateral or the Other Owner, (ii) all presentments, protests, demands and notices of protest, dishonor and non-performance, and (iii) any defense arising out of enforcement of Lender's rights with respect to the Collateral or a Borrower, even if such enforcement results in the loss of subrogation, reimbursement or other rights that the Other Owner may have against a Borrower.

6. **Prepayment.** You may prepay the unpaid balance of the Amount Financed in full or in part at any time without penalty. If You do so, You must pay the earned and unpaid part of the Finance Charge and all other amounts due up to the date of payment.

7. **Required Physical Damage Insurance.** You agree to have physical damage insurance covering loss or damage to the Vehicle for the term of this Contract, showing the Lender (and its successors and assigns) as "additional insured and loss payee." At any time during the term of this Contract, if You do not have physical damage insurance which covers both Your interest and the Lender's interest in the Vehicle, then the Lender may buy it for You. If the Lender does not buy physical damage insurance which covers both interests in the Vehicle, it may, if it decides, buy insurance which covers only the Lender's interest....

The Lender is under no obligation to buy any insurance, but may do so, if it desires. If the Lender buys either of these coverages, it will let You know what type it is and the charge You must pay. The charge will consist of the cost of the insurance and a finance charge, at the Annual Percentage Rate in this Contract, subject to limits under applicable laws.

8. **Late Charge.** You will have to pay a late charge on each payment received by the Lender more than ten (10) days late. The charge is shown on the front side of this Contract. Acceptance of a late payment or late charge does not excuse Your late payment or mean that You can keep making payments after they are due. The Lender may also take the steps set forth in the other applicable sections of this Contract if there is any late payment.

9. **Dishonored Check Charge.** For the return of a dishonored check, negotiable order of withdrawal or share draft issued in connection with any payment due under this Contract, the Lender may charge You a Fee of up to $50, plus any charges assessed by Lender's depository institution.

10. **Optional Insurance, Service Contract and GAP Addendum.** This Contract may contain charges for optional insurance, debt protection, service Contract and GAP addendum. If you breach this Contract, You agree that the Lender may claim benefits under these agreements and terminate them to obtain refunds of unearned charges. You will be notified of what is done.

11. **Insurance, Service Contract and GAP Addendum Refunds Received by Lender.** If any refund of premium for required insurance is received by the Lender, it may be credited to Your account or used to buy similar insurance or insurance which covers both the Lender's interest in the Collateral. Any refund on optional insurance, debt protection, service Contract and GAP addendum will be credited to Your account. This will not excuse You from making payments in accordance with the Payment Schedule on the front of this Contract.

12. **Default; Required Payment in Full Before Scheduled Date.** Unless specifically prohibited by applicable law, if You fail to pay any payment when due; if You die or are declared legally incompetent; if a proceeding in bankruptcy, receivership or insolvency is started by You or against You or Your property; or if You break any of the agreements in this Contract (default), the Lender can demand that You pay in full either 1) all past due payments, or 2) all You owe on this Contract at once (not just past due payments), together with all costs and expenses incurred by the Lender. After default, interest will continue to accrue at the interest rate (Annual Percentage Rate) shown on the front of this Contract.

If You reside in CO, CT, DC, IL, IA, KS, ME, MD, MA, MO, NE, SC, WV, or WI, the Lender will provide notice and You will have an opportunity to cure Your default* by paying the unpaid past due payments plus the earned and unpaid part of the Finance Charge, any late charges, and any amounts due because You did not keep Contract promises.

13. **Repossession of Vehicle for Default of Contract.** Repossession means that (1) If You fail to pay according to the Payment Schedule or (2) if You fail to cure Your default in those states where the Lender may not take Your Vehicle until You are given notice and the right to cure Your default, or (3) if You break any of the agreements in this Contract (default), the Lender can take the Vehicle from You. To take the Vehicle the Lender can enter Your property, or the property where the Vehicle is stored, so long as it is done peaceably. If there is any personal property in or on the Vehicle, such as clothing, the Lender may store it for You. Any accessories, equipment or replacement parts will remain with the Vehicle.

14. **Getting the Vehicle Back After Repossession.** If the Lender repossesses the Vehicle, You have the right to get it back. If You reside in CA, CT, DC, IL, KY, OH, or WI, which mandate by law Your right to reinstate Your Contract*, You may get the Vehicle back by paying the unpaid past due payments plus the earned and unpaid part of the Finance Charge and all other amounts due as allowed by law, including the cost of taking and storing the Vehicle and other expenses that the Lender has incurred.

If You reside in any other state, You may redeem the Vehicle by paying the entire amount You owe on the Contract (not just past due payments). The amount You owe will be the entire unpaid balance of the Amount Financed plus the earned and unpaid part of the Finance Charge and all other amounts due, including the cost of taking and storing the Vehicle and other expenses that the Lender has incurred. Your right to redeem will end when the Vehicle is sold by the Lender.

15. **Sale of the Repossessed Vehicle.** The Lender will mail a written notice of sale to You no less than ten (10) and no more than (20) days (depending on the state You reside in) before selling the Vehicle. If YOU do not redeem the Vehicle, reinstate Your contract, or cure Your default (whichever is applicable) by the date on the notice, the Lender can sell it. The Lender will use the net proceeds of the sale to pay all or part of Your debt.

Unless specifically prohibited by applicable law, the net proceeds of sale will be figured this way: Any late charges and any charges for taking and storing the Vehicle, cleaning and advertising, etc., and either a portion, or all, of any attorney's fees and court costs will be subtracted from the selling price.

If You owe the Lender less than the net proceeds of sale, the Lender will pay You the difference, unless the Lender is required to pay it to someone else. For example, the Lender may be required to pay another lender who has given You a loan and also taken a security interest in the Collateral.

If You owe more than the net proceeds of the sale, You may be liable for payment to the Lender of the difference between the net proceeds of the sale and what You owe (deficiency balance) when the Lender asks for it, unless prohibited by state laws. If You do not pay this amount when asked, You may also be charged interest on the deficiency balance at the Annual Percentage Rate in this Contract, subject to limits under applicable laws, until You do pay all You owe to the Lender.

16. **Collection Costs.** Unless specifically prohibited by applicable law, if the Lender hires an attorney to collect what You owe, You will pay the collection costs, reasonable attorney's fees and any court costs.

17. **Delay in Enforcing Rights; Changes to This Contract.** The Lender can delay or refrain from enforcing any of its rights under this Contract without losing them. For example, the Lender may extend the time for making some payments without extending others.

Lender may be required by state or federal law to change the terms and conditions of this Contract, and You agree to be bound by any document provided by the Lender that implements those changes. Any change in terms of this Contract must be in writing and signed by the Lender. No oral changes are binding. If any part of this Contract is not valid, all other parts will remain enforceable.

18. **Statements.** Upon written request from You, the Lender will provide You with a written statement of the date and amounts of payments and the total amount unpaid on this Contract.

19. **Applicable Law.** This Contract has been submitted for acceptance and is deemed to have been executed in Carson City, Nevada. Eaglemark Savings Bank is chartered and regulated by the State of Nevada Department of Business and Industry, Financial Institutions Division. Unless specifically prohibited by applicable law, this Contract and Your account will be governed by the laws of the State of Nevada and applicable Federal laws. If any provision of this Contract is prohibited by applicable law, such provision will be void, but the remaining provisions will remain valid and enforceable.

20. **Warranties Lender Disclaims.** You understand that the Lender is not offering any warranties and that there are no implied warranties of merchantability, of fitness for a particular purpose, or any other warranties, expressed or implied by the Lender, covering the Collateral.

This provision does not affect any warranties covering the Collateral which may be provided by the manufacturer of the Vehicle.

21. **Notice of Assignment.** Upon receipt and funding of this Contract by ESB, this Contract will automatically be assigned to Harley-Davidson Credit Corp., pursuant to the Master Assignment Agreement in effect between ESB and Harley-Davidson Credit Corp.

22. **Guarantors and Co-Obligors.** The holder of this Contract may share your account information, including, but not limited to, non-public personal information, with any and all Guarantors and/or Co-Obligors under this contract.

23. **Arbitration.** This arbitration provision relates to a contract that evidences a transaction involving interstate commerce. The parties acknowledge and agree that the Federal Arbitration Act (9 U.S.C. § 1 et seq.) shall govern any arbitration under this Contract. At the request of either party, any controversy or dispute arising out of or relating in any way to this Contract or the sale of this Contract, including but not limited to any claim or dispute, whether in contract, tort, statute, or otherwise, between You and ESB or any of ESB's employees, officers, directors, agents, successors, assigns, parents, subsidiaries, or affiliates, as will as recovery of any claim under this Contract, or the applicability of this arbitration clause, shall be resolved by neutral binding arbitration on an individual basis without resort to any form of class action or any other collective or representative proceeding before one of the following: American Arbitration Association (1-800-778-7879), or National Arbitration Forum (1-800-474-2371) ("Arbitration forum"). You may obtain a copy of the rules from them by calling the numbers or visiting their Web sites. You may select the Arbitration forum. Any arbitration shall be conducted under the then current arbitration rules for the Arbitration forum You select. All preliminary issues of arbitration shall be decided by the arbitrator.

(1) The arbitration shall take place in the federal district in which You reside unless another location is mutually agreed upon by the parties. The arbitrators shall be attorneys or retired judges selected in accordance with the rules. The arbitration award shall be in writing but without a supporting opinion.

(2) If You demand arbitration first, You will pay one-half of any arbitration filing fee. We will pay the rest of the filing fee or the whole filing fee (not to exceed $500) if We demand arbitration first or the arbitrator finds that applicable law requires Us to do so or that You are unable to do so, or that We must do so to make this provision enforceable. We will pay the arbitration costs and fees for the first day up to a maximum of 8 hours. We will advance costs and fees on Your behalf if directed to do so by the arbitrator subject to late allocation by the arbitrator.

(3) The arbitrator's award shall be final and binding upon the parties. The parties waive their right to seek remedies in court, including the right to a jury trial, but You and We retain the right to exercise self-help remedies and to seek provisional remedies from a court. You expressly waive any right You may have to arbitrate a class action and You will not be able to participate as a representative or member of any class of claimants ("Class Action Waiver"). An award in arbitration will be enforceable under the Federal Arbitration Act by any court having jurisdiction.

If any portion of this arbitration provision other than the Class Action Waiver is deemed invalid or unenforceable for any reason, the remaining portions of this arbitration provision shall remain valid and in force. If the Class Action Waiver shall be deemed invalid or unenforceable for any reason, the arbitration provision in this Contract shall be unenforceable. In the event of conflict or inconsistency between this arbitration provision and the other provisions of this Contract or any prior agreement, this arbitration provision shall govern. This provision shall survive the termination of any contractual agreement between You and Us.

24. **Questions on Your Account.** To contact the Lender about this account, call (800) 699-2336.

* Note: Some cure and reinstatement states place limits on how often You may cure Your default within a specified time or during the term of Your obligation, or reinstate Your Contract after repossession of the Vehicle.

---

**NOTICE: ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.**

---

Eaglemark Savings Bank

P.O. Box 22048
Carson City, NV 89721


A subsidiary of Harley-Davidson Credit Corp.

# CERTIFICATE OF TITLE

| PREFIX | IDENTIFICATION NUMBER | SUFFIX | YEAR | MAKE | MODEL | BODY TYPE |
|---|---|---|---|---|---|---|
| 2 | 1HD1J AB185 Y0587 | 96 | 2005 | HD | | MC |

| TYPE OF TITLE | DUPLICATE NO. | GVW/WC/LGTH. | COLOR/MTL/HP | DEALER I.D. | AXLES/PROP | FUEL |
|---|---|---|---|---|---|---|
| STANDARD | | 0 | BLACK | | 2 | |

| FEE | ISSUE DATE | VIN-REPLACEMENT | MILEAGE | STATUS |
|---|---|---|---|---|
| 40.00 | 03-05-2008 | | 5314 | A |

F-FLOOD    S-SALVAGE
P-POLICE   T-TAXI
L-LEMON LAW
A-ACTUAL MILEAGE
N-NOT THE ACTUAL MILEAGE
M-MILEAGE EXCEEDS THE MECHANICAL LIMITS

OWNER(S)
JOSEPH A DOBLEMAN JR
522 RIDGEWAY ST
GLOUCESTER    NJ 08030 1935

NUMBER OF OWNERS: 1
NUMBER OF LIENHOLDERS: 1

OWNER DL/CC #:

I, CHIEF ADMINISTRATOR OF THE MOTOR VEHICLE COMMISSION, OF THE STATE OF NEW JERSEY, DO HEREBY CERTIFY THAT EVIDENCE OF PURCHASE OF OWNERSHIP, IN COMPLIANCE WITH THE LAWS OF THE STATE OF NEW JERSEY, OF THE DESCRIBED ARTICLE, HAS BEEN RECORDED AND FILED WITH ME; AND I DO HEREBY ISSUE THIS CERTIFICATE OF OWNERSHIP SUBJECT TO SECURITY AGREEMENT OR LIEN, IF ANY AS STATED.

SIGNATURE

**State of New Jersey**
MOTOR VEHICLE COMMISSION

CONTROL NUMBER

SECOND LIENHOLDER
DATE

LIEN RELEASED BY:
SIGNATURE_____
SECOND RELEASE
TITLE_____  DATE_____

FIRST LIENHOLDER
DATE  03-05-2008
ESB AND ITS ASSIGNS
PO BOX 21650
CARSON CITY    NV 89721

LIEN RELEASED BY:
SIGNATURE_____
FIRST RELEASE
TITLE_____  DATE_____

MB

ISM/SS-1 (R11/07)

**ALTERATION OR ERASURE VOIDS THIS TITLE.    KEEP IN SAFE PLACE**

VOID IF ALTERED

HOLD TO LIGHT TO VIEW NEW JERSEY WATERMARK